UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMAR BARBARA,<br><br>    Plaintiff,<br><br>    v.<br><br>HERE NORTH AMERICA, LLC,<br><br>    Defendant. | Case No. 16-cv-01650-RS<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |

**I. INTRODUCTION**

    Plaintiff Lamar Barbara brings this action against his former employer, defendant HERE North America, LLC, alleging race harassment, race discrimination, retaliation, and wrongful termination in violation of California law. HERE moves for summary judgment on all of Barbara's claims, asserting that his harassment claim is time-barred and that HERE's legitimate, non-discriminatory reasons for terminating Barbara's employment were not a pretext for discrimination. For the reasons set forth below, the motion is denied.

**II. BACKGROUND**

    In September 2012, Barbara learned about an available Hardware Technician position at HERE through Kenneth Pulido, whose brother knew Barbara. Barbara applied for the position and interviewed with Production Manager Todd Mirkin, then Manufacturing Engineer Cyrus McGuire, and Pulido. Upon recommendation from McGuire and Pulido, Mirkin hired Barbara in March 2013 as a Hardware Technician in HERE's Reality Capture Systems department. Barbara

began work on April 15, 2013, working at the company's warehouse facility in Berkeley. His duties involved building and repairing camera rigs that were installed on the tops of vehicles as part of HERE's global 3D street-mapping system. In December 2013, McGuire replaced Mirkin as Barbara's manager. Pulido also had some responsibility for supervising Barbara's work leading him to view Pulido as equivalent to a manager.

Around that same period, McGuire and Pulido recall that Barbara began having attendance and tardiness issues, although Barbara claims he was not more frequently absent than other workers and did not work fewer hours than average. McGuire and Pulido also observed Barbara's productivity as being poor. According to McGuire, around this time he and some of Barbara's co-workers began suspecting that Barbara was experiencing issues with alcohol abuse. Specifically, McGuire and other co-workers believed that Barbara often smelled of alcohol during the work day, that he drank at work, and that the drinking affected his performance at work. HERE contends that although alcohol was consumed in the Berkeley warehouse during barbeques and Friday happy hours, drinking during work hours was unusual. Barbara disagrees, insisting that drinking was an integral part of the culture at HERE and that co-workers frequently consumed alcohol while at work during normal business hours. In any event, on May 19, 2014, McGuire sent Barbara a final written warning regarding his consumption of alcohol in violation of HERE's drug and alcohol policy. Declaration of Cyrus McGuire ("McGuire Decl.") ¶ 21, Ex. F. That same day, a member of HERE's Human Resources department named Kayla Farmer provided Barbara with information regarding the company's procedures for taking a leave of absence. Barbara decided to check himself into alcohol rehabilitation, and he began his leave of absence in June 2014. While on leave, Barbara spent time in both inpatient and outpatient rehabilitation facilities before returning to work on November 3, 2014.

Meanwhile, in mid-2014, HERE began planning for a company-wide reduction in force. At the same time, HERE's Reality Capture Systems department experienced dramatic changes in production needs. Accordingly, that department, and by extension the Berkeley production facility where Barbara worked, were impacted by the companywide reduction in force. John Ristevski,

former Vice President of the Reality Capture Systems department, and Michael Prados, its former Senior Manager, were responsible for implementing and managing the reduction in force in that department. In November 2014, Ristevski and Prados, in consultation with McGuire and Senior Human Resources Manager Colleen Brown, made the decision to terminate Barbara's employment. According to those involved in the decision, the rationale for selecting Barbara was that his services were no longer needed at the Berkeley warehouse, he was the least productive member of his team, and the most junior. McGuire believed that Barbara had demonstrated performance issues before his leave of absence and continued to do so following his return. On November 19, 2014, Prados and Brown informed Barbara that he was being laid off as part of a companywide reduction in force. Barbara's official separation date was December 31, 2014, and while paid through that date, he was not required to return to the warehouse following the meeting with Prados and Brown.

Barbara filed a charge with the Department of Fair Employment and Housing ("DFEH") on August 27, 2015, and received his right-to-sue notice the same day. On February 19, 2016, Barbara filed a complaint in Alameda County Superior Court, and HERE removed the action to federal court on April 1, 2016. Barbara alleges that he was subjected to daily racial harassment at HERE, including having a sign reading "Colored" posted above his work area door, and hearing the "n-word" and extremely derogatory remarks about black people espoused by his supervisors and co-workers. Barbara contends that he was terminated in retaliation for complaining about racial harassment to Human Resources. He also contends that he was singled out for discipline regarding alcohol use at work even though other employees frequently drank on the job. Accordingly, he seeks to hold HERE liable for race harassment (hostile work environment), race discrimination, retaliation, and wrongful termination.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary

judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id*. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Rule 56(e) (2010).

## IV. DISCUSSION[1]

**A. Hostile Work Environment/Race Harassment**

To establish a *prima facie* case of hostile work environment race harassment, a plaintiff must demonstrate that: (1) he or she was subjected to unwelcome conduct or comments; (2) the harassment complained of was based on the plaintiff's race; and (3) the harassment was "sufficiently severe or pervasive" so as to "alter the conditions of employment and create an abusive working environment." *Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal. 4th 121, 130 (1999).

As an initial matter, HERE argues that Barbara's race harassment claim is time-barred with respect to any alleged harassing conduct that occurred before August 27, 2014, one year prior to the date Barbara filed his DFEH charge. *See* Cal. Govt. Code § 12960(d); *Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031, 1040 (2002). According to Barbara's own testimony, several instances of harassment that he complains of occurred before August 27, 2014:

- In February 2014, Barbara's co-workers allegedly told him that the receptionist asked him for his ID "because you're black, fool." Deposition of Lamar Barbara

---

[1] Barbara has moved to strike the Supplemental Declaration of Justin Curley and all references thereto in HERE's reply brief on the grounds that the material introduces "new and further arguments" regarding "rig-building and lack of availability of work for Plaintiff when he returned from leave." Contrary to Barbara's assertions, this evidence is consistent with HERE's reduction in force explanation for Barbara's termination because it merely helps explain why the reduction affected the Berkeley warehouse specifically. The evidence also serves to rebut Barbara's assertion that he was given menial tasks upon his return to work for discriminatory or retaliatory reasons. For these reasons, Barbara's objections to HERE's reply evidence are overruled.

("Barbara Depo.") at 73:9-14, 74:18-25.

- In or about April 2014, Pulido said to Barbara "damn, you got hella black people problems." *Id.* at 75:11-16, 78:17-20, 81:22-24, 82; 4-11.
- At some point between mid-2013 and into 2014, Pulido asked Barbara "why do black people love to waste everybody's time" and in the fall of 2013 asked him "why do black people buy shoes and a car before they buy a house." *Id.* at 102:1-9, 103:23-104:3.
- In December 2013, when Barbara was working in the camera room, someone walked by and said, "Is this where all the black people work?" *Id.* at 80:6-13, 80:24-81:1.
- At unspecified times, McGuire used the terms "brother" and "black people" in a way that Barbara felt were stereotypical and offensive although he was unable to identify in what context these statements were made. *Id.* at 282:24-285:6.
- In 2013, someone hung a sign that said "Colored" above the doorway to the room where Barbara worked. *Id.* at 250:12-20, 251:2-6, 251:20-252:9; Declaration of Lamar Barbara ("Barbara Decl.") Ex. E.

Barbara contends that under the "continuing violations" doctrine, "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1056 (2005). The acts outside and within the limitations period need not be identical to constitute a continuing violation, so long as "there is sufficient evidence to show that those acts are related closely enough to constitute a continuing violation." *Dominguez v. Washington Mutual Bank*, 168 Cal. App. 4th 714, 715 (2008). Because the record shows that Barbara was on a leave of absence from work from at least June 2, 2014, through November 3, 2014, the question is whether there is evidence of continued harassment after Barbara returned to work, leading up to his termination on November 19, 2014. As indicated above, Barbara's claim that he was subjected to "daily harassment on the basis of [his] race" from May 2014 through

November 2014, Barbara Decl. ¶ 11, is somewhat undercut by the undisputed fact that he was not at work from at least June 2, 2014, until November 3, 2014. His deposition testimony also directly contradicts any inference that the "Colored" sign incident, Barbara Decl. ¶ 13, or the comments about "black people" by McGuire and Pulido, Barbara Decl. ¶ 14, took place in November 2014. Although Barbara and McGuire testified that Pulido used the "n-word" in the workplace at unspecified times during the course of Barbara's employment, *see* Barbara Decl. ¶ 13; Deposition of Cyrus McGuire ("McGuire Depo.") at 68:14-23, Barbara's counsel clarified at the hearing on summary judgment that none of the racially offensive incidents identified in Barbara's complaint and opposition papers took place in November 2014.[2]

Instead, Barbara argues that the efforts by his supervisors to freeze him out at work upon his return from leave—by giving him menial tasks and not inviting him to team trainings—constituted "continuing violations." He also asserts that his termination on November 19, 2014, was an act of race harassment sufficient to trigger the continuing violation doctrine. Barbara's theory is that he was subjected to this conduct after complaining to Human Resources in September 2014, because his supervisors and co-workers were told to refrain from engaging in racially offensive conduct. In particular, Barbara contends that McGuire's role in his workplace isolation in November 2014 was "closely related" to McGuire's allegedly unfair treatment of Barbara prior to his leave, which included "vague, dismissive and belittling" verbal interactions, "body language and non-verbal communication" that gave Barbara the impression that McGuire did not want to interact with him, and a reprimand for drinking at work even though it was a common practice among employees at HERE. *See* Barbara Decl. ¶¶ 16-18. Although each of these individual incidents is not actionable on its own, Barbara argues that the incidents considered

---

[2] HERE raises an evidentiary objection to all references to Pulido's use of the "n-word" on the grounds that McGuire's deposition testimony does not indicate the statements were made during Barbara's employment and because Barbara did not mention Pulido's use of the "n-word" in his deposition when asked about all racially offensive comments upon which his claims were based. Although Barbara's failure to mention this patently offensive conduct in deposition may weaken his credibility, his current allegations are not necessarily contradicted by his deposition because he was not specifically asked whether he ever heard the "n-word" at work.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
CASE NO. 16-cv-01650-RS
7

together, including McGuire comments about "black people," present a pattern of hostile conduct toward Barbara because of his race. According to Barbara, workplace stress contributed to his need to take a leave of absence, and his subsequent isolation at work and ultimate firing reflected the same demeaning message: that he had to be prepared to submit to racial harassment in order to work. *See Roby v. McKesson Corp.*, 47 Cal. 4th 686, 707 (2009). Under these facts, Barbara has made a sufficient showing of a "continuing violation," and therefore all relevant incidents outside and within the statute of limitations will be considered.

HERE's attempts to minimize the severity and pervasive nature of the above referenced comments and incidents are unpersuasive. While Barbara's recollection of Pulido's use of the "n-word" on multiple occasions in the workplace is subject to some question as to his recall, it remains undisputed on this record. Additionally, as noted above, Barbara testified that someone put a sign above the door entrance to Barbara's work area that said "Colored," plainly a reference to Barbara's race. Given the historical context of these terms in connection with the abuse and oppression of black Americans, neither may be disregarded as mere "joking." McGuire's apparent failure to take any action with respect to these incidents, despite his admission at deposition that he was aware of them, creates a significant issue. Considering these incidents in context with others recalled by Barbara in his deposition and declaration, a reasonable factfinder could conclude that Barbara was subjected to serious and pervasive harassment that would have interfered with his ability to work. Surely the link between these events and the limitations period for purposes of a "continuing violation" is somewhat fragile, but the record is not as conclusive as it must be to warrant a grant of summary judgment.

**B. Race Discrimination**

Because of the similarity between state and federal discrimination laws, California courts evaluating claims under the FEHA look to pertinent federal precedent governing analogous federal discrimination laws. To establish a *prima facie* case of race discrimination, a plaintiff must either produce direct evidence of discriminatory intent, or satisfy the first prong of the three-stage burden-shifting test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817

(1973). In order to prevail on summary judgment under that framework, a plaintiff is generally required to show (1) membership in a protected class; (2) competent performance; (3) an adverse employment action; and (4) some other circumstance suggesting a discriminatory motive. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354-58 (2000). If a plaintiff satisfies these criteria, a presumption of discrimination arises. The burden then shifts to the employer to rebut the presumption by producing evidence that the adverse action was taken for a legitimate, nondiscriminatory reason. *Guz*, 24 Cal. 4th at 354-58. Plaintiff may rebut the employer's showing with "specific, substantial evidence" that the employer's explanation is pretextual or otherwise present evidence of the employer's discriminatory motive. *Id.*; *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal. App. 4th 798, 805-07 (1999).

Barbara contends that he has provided direct evidence of discriminatory animus with reference to the "Colored" sign, the use of the "n-word," comments about "black people" and other racialized treatment that he asserts he reported to Farmer. Barbara does not, however, explain how these incidents in the workplace demonstrate that his *termination* was motivated by antagonism towards his race.[3] Accordingly, this evidence is more properly considered as part of Barbara's *prima facie* case under the burden-shifting framework.

HERE argues that summary judgment is warranted on Barbara's race discrimination claim because he cannot establish a *prima facie* case of discrimination under the *McDonnell Douglas* test and, even if he could, he cannot establish that HERE's proffered legitimate, nondiscriminatory reason for his layoff was pretextual. First, HERE offers evidence that Barbara was not performing competently. Barbara's co-workers and supervisors testify that Barbara was considered the lowest performer on this team. *See* Declaration of Michael Prados ("Prados Decl.") ¶ 9, Ex. A; McGuire

---

[3] Elsewhere in his opposition, Barbara makes reference to being singled out for discipline regarding his alcohol use and being denied training that was offered to other employees. Because neither of these occurrences qualify as adverse employment events—there is no evidence that Barbara suffered negative consequences resulting from a "warning" about alcohol use or not receiving an unspecified form of training—they do not support Barbara's race discrimination claims.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
CASE NO. 16-cv-01650-RS
9

1  Decl., ¶ 26; Declaration of Kenneth Pulido ("Pulido Decl.") ¶ 11. Other testimony, including by
2  Barbara himself, demonstrates that prior to being laid off, Barbara had been chronically late or
3  missing from work. McGuire Decl. ¶¶ 8-20, Exs. A-E; Pulido Decl., ¶¶ 8-11; Prados Decl., ¶ 9;
4  *see also* Barbara Depo. At 96:14-15. Barbara's co-workers and supervisors also testify that
5  Barbara was unproductive at work and appeared regularly to consume alcohol during working
6  hours in violation of company policy. According to HERE, these failures to abide by basic work
7  standards constitute unacceptable job performance and preclude Barbara from establishing a *prima*
8  *facie* case of discrimination. Although HERE's evidence demonstrates that Barbara's selection for
9  termination was justified based on his job performance as compared to his co-workers, it does not
10 defeat Barbara's *prima facie* case on the grounds that he was not performing competently.

HERE also contends that Barbara is unable to show some other circumstance suggesting discriminatory motive. At his deposition, Barbara admitted that he has no reason to believe Prados or Ristevski—two of the decisionmakers involved in his selection for layoff—would discriminate against him on the basis of race. Barbara Depo. at 280:7-9, 11-15, 18-23. Barbara contends that because Pulido had supervisory authority over him, his racially insensitive remarks should be considered for the purposes of his discrimination claim. Yet he offers no evidence that Pulido, in fact, was involved in the decision to terminate him. Therefore, the question is whether Barbara has presented evidence from which it can be inferred that the remaining decisionmaker in Barbara's termination, McGuire, harbored discriminatory animus towards Barbara. According to Barbara, McGuire was aware of the "Colored" sign incident and Pulido's use of the "n-word". Barbara also claims that at some point, when McGuire saw Barbara walk into the camera room he stated "Is this the Black people room?" Barbara Decl. ¶ 14. He also asserts that McGuire was unfriendly towards Barbara, which differed from his treatment of other employees, that McGuire excluded Barbara from certain trainings and singled him out for discipline regarding alcohol use, that McGuire assigned Barbara only menial tasks, and that McGuire used the terms "brother" and "black people" in stereotypical and offensive ways. *Id.* ¶¶ 15, 16, 17, 18; Barbara Depo. at 282:1-285:6. This is sufficient "other evidence of discrimination" to establish a *prima facie* case.

The burden then shifts to HERE, which must offer a legitimate, non-discriminatory reason for terminating Barbara. As explained in the factual background section, HERE has met its burden by providing ample uncontested evidence that there was a companywide reduction in force in 2014, that substantial changes in production needs resulted in Barbara's job being affected, and that Barbara was specifically selected for termination because of his performance issues and lack of seniority. *See* Prados Decl., Ex. A.

The burden then shifts back to Barbara to show that HERE's articulated reason for his termination was not the true reason. Barbara may succeed by proving pretext "(1) indirectly, by showing that [HERE]'s proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. University of California Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000). Barbara argues that HERE's shifting reasons for termination create triable issues as to pretext. Specifically, Barbara asserts that McGuire's stated reasons for Barbara's termination are inconsistent with those offered by Farmer.

This argument is unpersuasive for several reasons. Farmer testified that she was not directly involved in the decision to terminate Barbara and that her main responsibility was to ensure the termination followed the correct procedures. Her testimony reflects her understanding—her secondhand knowledge—that Barbara's position was eliminated due to a reduction in force. Deposition of Kayla Farmer ("Farmer Depo.") at 87:11-25. According to Barbara, Farmer denied that Barbara had performance issues before or after his leave of absence, or that performance contributed to the decision to terminate him. That is a misrepresentation of Farmer's responses to questions regarding Barbara's performance at work—Farmer merely asserted that *she did not know* whether performance was a factor. *See* Farmer Depo. at 66:23-67:11. Barbara also mischaracterizes Farmer's testimony as indicating that McGuire told her the reasons for terminating him. At her deposition, Farmer merely stated that McGuire asked her whether he would need to replace Barbara, given his extended absence from work and uncertain date of return. Farmer Depo. at 75:3-15; 145:10-19. In any case, Farmer's testimony is not

inconsistent with McGuire's statements indicating that Barbara's work performance was an issue. Farmer's explanation goes to the question of why anyone at HERE was terminated and McGuire's explanation goes to the question of why Barbara specifically was selected for termination.[4] Accordingly, Barbara has not put forth sufficient evidence demonstrating that HERE's stated reasons for terminating him are unworthy of credence.

With respect to whether unlawful discrimination more likely motivated Barbara's termination, Barbara concedes he has no reason to believe that three out of the four individuals involved in the decision (Prados, Ristevski, and Brown)[5] harbored any racial animus towards him. With respect to McGuire, there is evidence in the record that he made comments about "black people" that Barbara perceived to be demeaning, that he did not use his supervisory authority to remedy racially offensive conduct in the workplace, and that he treated Barbara differently from his non-black co-workers, including giving him a warning about behavior that was commonly accepted at HERE. Barbara's selection for termination was based on a RIF evaluation matrix that covered several employees at the Berkeley warehouse. *See* Prados Decl. ¶ 9, Ex. A. Barbara's evaluation was completed by his supervisor, McGuire. Construing the evidence in the light most favorable to Barbara, it is conceivable that McGuire's alleged racial animus toward Barbara played a role in Barbara's low marks on McGuire's evaluation. It is also possible that Barbara was indeed performing poorly, but that this was due in part to the fact he had complained about race harassment at work and was continuing to feel ill-treated because of his race. Although HERE strenuously disagrees with Barbara's interpretation of McGuire's conduct and motivations, it is for

---

[4] Barbara also suggests that McGuire made inconsistent statements regarding Barbara's health issues, averring that he did not know about Barbara's alcohol treatment or disability even though he gave Barbara a warning regarding alcohol use. McGuire Depo. at 103:19-23. Once again, Barbara's argument rests on a misrepresentation of McGuire's testimony (he says he was not aware of health issues "beyond alcoholism," thus indicating that he knew about Barbara's alcohol dependence). In any case, Barbara does not explain how this alleged inconsistency reflects pretext.

[5] Barbara claims in his opposition that Farmer was involved in the decision to fire him, but she denies her direct involvement in his termination. Because there is no evidence that Barbara had reason to know who specifically was involved in the decision to terminate his employment, no facts in the record call into question Farmer's claim of non-involvement.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
CASE NO. 16-cv-01650-RS
12

a jury to make a determination on those questions of fact. Therefore, HERE's motion for summary judgment on Barbara's race discrimination claim is denied.

**C. Retaliation**

To establish a *prima facie* case of retaliation, Barbara must show (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between the two. *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 138 (2007). Barbara's primary theory of retaliation is that he was terminated[6] in response to his complaints of race harassment[7] to Farmer in September 2014. HERE acknowledges that there are disputed issues of fact with regard to the substance of Barbara's complaints to Farmer. Barbara claims that he complained of race harassment and hostile work environment "at least a dozen times," whereas Farmer categorically denies that Barbara ever mentioned race specifically in his complaints to her. The close temporal proximity between Barbara's alleged complaints to Farmer and his termination is sufficient to establish a *prima facie* case of retaliation. *See Passantino v. John & Johnson Consumer Products, Inc.*, 212 F.3d 493, 507 (9th Cir. 2000). As explained above, because HERE has met its burden of providing a legitimate, non-discriminatory explanation for Barbara's termination, Barbara must provide evidence that those proffered reasons were pretextual. Barbara

---

[6] Barbara also asserts in his opposition that adverse employment actions included "ongoing harassment by McGuire, Pulido and others when he returned to work in November 2014," McGuire's refusal immediately to give Barbara serious tasks until he had earned back McGuire's trust, and assignment to menial tasks despite requests for substantive work. As to the first, Barbara's counsel at the hearing disclaimed any allegations that racially offensive conduct or comments occurred in November 2014. As to the second and third, Barbara has not made a sufficient showing that being given menial tasks and being left out of some trainings constituted a change in the terms and conditions of employment such that they qualified as adverse employment actions. Therefore, the retaliation analysis, like the race discrimination analysis, focuses only on Barbara's termination.

[7] In reply, HERE objects to Barbara's assertion that HERE also retaliated against him for taking a leave of absence for medical reasons relating to his alcohol rehabilitation. Because a claim for retaliation under the Family Medical Leave Act does not appear on the face of Barbara's complaint, HERE argues that it did not have the opportunity to investigate this claim in discovery. HERE's objections are well taken, as Barbara's complaint does not mention his extended absence from work at all. For that reason, Barbara's may not now claim that he was subject to retaliation for taking FMLA protected leave.

asserts that pretext may be inferred from Farmer's knowledge of his complaints and her conveying these complaints to McGuire and Pulido. Barbara's evidence of Farmer's communication is based on an arguably ambiguous hearsay statement: in deposition, Barbara stated that he believed Farmer told McGuire and Pulido about his complaints because she said "Yes, I'm taking care of it." Barbara Depo. 89 ¶ 14-19. Considering Barbara's complaint to Farmer alone, given her responsibilities as a member of HR, it is nonetheless plausible that she communicated these concerns to the decisionmakers involved in Barbara's termination. Accordingly, summary judgment on Barbara's retaliation claim is denied.

### D. Wrongful Termination

Barbara's claim for wrongful termination against public policy is predicated on his claims for race discrimination and retaliation. Because summary judgment is denied as to those claims, it is also denied with respect to the wrongful termination claim.

### E. Punitive Damages

HERE moves to dismiss Barbara's claim for punitive damages as a matter of law. Punitive damages can be assessed against a corporation only if a plaintiff proves, by clear and convincing evidence, that conduct constituting oppression, fraud, or malice was committed by an officer, director or managing agent of the corporation. *See White v. Ultramar, Inc.*, 21 Cal. 4th 563, 572 (1999); Cal. Civ. Code § 3294(b). A determination on the availability of such damages must await the development of the factual record at trial.

## V. CONCLUSION

For the reasons set forth above, HERE's motion for summary judgment is denied.

**IT IS SO ORDERED**.

Dated: January 29, 2018

RICHARD SEEBORG
United States District Judge

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
CASE NO. 16-cv-01650-RS
14